IN FEDERAL DISTRICT COURT FOR THE

WESTERN DISTRICT OF WISCONSIN – EAU CLAIRE DIVISION

| | |
|---|---|
| LORAINE ANGELLA LEWIS, an individual, | No. 3:20-cv-00691 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ANTHONY HOWARD ESPESETH an individual, | |
| Defendant. | |

COMES NOW Plaintiff LORAINE ANGELLA LEWIS by and through counsel and alleges the following.

[The remainder of this page is intentionally left blank]

## I. INTRODUCTION

1. This is a lawsuit for immigration financial support under the United States Citizenship and Immigration Services ("USCIS") Form I-864, Affidavit of Support (the "Affidavit of Support").

2. Affidavit of Support was created by Congressional mandate in 1996 to ensure that family-sponsored immigrants are ensured a basic level of financial wellbeing, sufficient to meet the most basic needs of life.

3. In creating the Affidavit of Support, Congress required visa petitioners, rather than the American people, serve as a financial safety net to new immigrants.

4. Once executed, the Affidavit of Support is a legally binding contract between the sponsor and the United States government, of which the intending immigrant is a third-party beneficiary.

5. Plaintiff Loraine Angela Lewis is the beneficiary of an Affidavit of Support signed by Defendant Anthony Howard Espeseth.

6. Mr. Espeseth has failed to provide Ms. Lewis with the financial support promised that be promised by signing the Affidavit of Support.

7. This lawsuit seeks damages for Mr. Espeseth's violation of the Affidavit of Support and to compel him to fulfill the support duty mandated by the Affidavit of Support and federal law.

[The remainder of this page is intentionally left blank]

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Immigration and Nationality Act *See* 8 U.S.C. § 1183a(e)(I).

9. This Court has personal jurisdiction because Mr. Espeseth resides in this District.

10. Additionally, this court has personal jurisdiction over Mr. Espeseth as, by signing the Affidavit of Support he submitted to the jurisdiction of any court with subject matter jurisdiction over Ms. Lewis's claims. 8 U.S.C. § 1183a(a)(1)(C).

11. Venue is proper in this District as a substantial part of the events or omissions giving rise to the claims occurred in this District. 28 U.S.C. § 1391(b)(2).

## IV. PLAINTIFF

9. Plaintiff Loraine Angela Lewis is a citizen of Jamaica and is lawful permanent resident ("Resident") of the United States of America.

10. Ms. Lewis resides in Eau Claire, Wisconsin.

[The remainder of this page is intentionally left blank]

## V. DEFENDANT

11. Defendant Anthony Howard Espeseth is a citizen of the United States of America.

12. As further alleged below, Mr. Espeseth served as Ms. Lewis's immigration sponsor by executing an Affidavit of Support, thereby contractually promising to provide a specified level of income to Ms. Lewis.

13. Upon information and belief, Mr. Espeseth resides in Eau Claire, Wisconsin.

## VI. FACTUAL ALLEGATIONS

**Background concerning the Affidavit of Support.**

14. United States immigration law has long prohibited immigration by individuals deemed likely to be a drain on public resources.

15. Since 1882 federal law has excluded the immigration of individuals considered "likely to become a public charge." Act of Aug. 3, 1882, 22 Stat. 214.

16. The current immigration statute, in effect at all times material to the facts alleged herein, forbids the entry of immigrants determined likely to become a "public charge." 8 U.S.C. § 1182(a)(4).

17. The USCIS Form I-864, Affidavit of Support ("Affidavit of Support") is required for a family-based immigrant visa applicant to overcome public charge inadmissibility. *See* 8 U.S.C. § 1182(a)(4)(C).

18. The Affidavit of Support is required for K-1 category non-immigrant fianc(é)es who seek to adjust status to Residents.

19. The only family-based immigrants who are exempt from submitting an Affidavit of Support are those classes listed at 8 C.F.R. § 213a.2(a)(2)(ii), to wit: (A) self-petitioners under the Violence Against Women Act; (B) grandfathered immigrants with petitions pending prior to December 19, 1997; (C) those who have worked and/or may be credited with 40 qualifying quarters of coverage as defined under title II of the Social Security Act; (D) a child admitted under 8 U.S.C. § 1181(a) and 8 C.F.R. § 211.1(b)(1); and (E) a child who will automatically acquire citizenship under 8 U.S.C. § 1431.

20. Prior to October 15, 2019, intending immigrants who qualified for an exemption under 8 C.F.R. § 213a.2(a)(2)(ii) were required to submit a USCIS Form I-864W, Request for Exemption for Intending Immigrant's Affidavit of Support.

21. After October 15, 2019, the exemptions under 8 C.F.R. § 213a.2(a)(2)(ii) continue to apply, but USCIS no longer requires the Form I-864W and collects related information through other, updated forms.

22. Creation of the Affidavit of Support was mandated by Congress to ensure that certain classes of immigrants to the United States would be guaranteed a level of financial support necessary to meet basic human needs. *Cf.* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009.

1  23.    The immigration agencies published interim regulations implementing
2  the Form I-864 in the summer of 1997. Affidavits of Support on Behalf of
3  Immigrants, 62 Fed. Reg. 54346 (Oct. 20, 1997) (to be codified at 8 C.F.R. §
4  213.a1 *et seq*.).
5  24.    The Affidavit of Support regulations were finalized in 2006. Affidavits of
6  Support on Behalf of Immigrants, 71 Fed. Reg. 35732 (June 21, 2006).
7  25.    Once executed, the Affidavit of Support is a legally binding contract
8  between the sponsor and the United States Government.
9  26.    Signing the Affidavit of Support, the sponsor agrees to provide the
10 intending immigrant with any support necessary to maintain her at an income
11 that is at least 125 percent of the Federal Poverty Guidelines for her household
12 size.
13 27.    The Federal Poverty Guidelines are published annually in the Federal
14 Register by the U.S. Department of Health & Human Services.
15 28.    The Federal Poverty Guidelines govern the calculation of damages for
16 the claims asserted herein.
17 29.    To wit, damages are calculated as 125% of the Federal Poverty
18 Guidelines for the sponsored immigrant's household size for a period, less her
19 actual earned income for that period.
20 30.    With respect to the sponsor's support obligation, "income" means the
21 sponsored immigrant's total income (or adjusted gross income for any years the
22
23

individual filed an IRS Form 1040EZ) for purposes of her U.S. Federal income tax liability. 8 C.F.R. § 213a.1.

31. An Affidavit of Support is considered executed once it is signed and submitted to either USCIS or the Department of State in support of an intending immigrant's application. 8 C.F.R. § 213a.2(a)(B)(ii).

32. Once executed, the Affidavit of Support becomes a binding contract between the sponsor and the United States government for the benefit of the sponsored immigrant. 8 C.F.R. § 213a.2(d).

33. The Affidavit of Support obligation may be enforced by the sponsored immigrant, who is a third-party beneficiary of the contract. 8 U.S.C. § 1182(a)(1)(B); 8 C.F.R. § 213a.2(d).

34. Under federal regulations, a sponsored immigrant is not required to make any demand for payment from a sponsor prior to commencing a lawsuit to enforce the sponsorship obligation under the Form I-864. 8 C.F.R. § 213a.4(a)(2).

35. Signing the Affidavit of Support, the sponsor agrees to submit to the personal jurisdiction of any federal or state court that has subject matter jurisdiction over a lawsuit against the sponsor to enforce obligations under the Affidavit of Support.

36. Signing the Affidavit of Support, the sponsor certifies under penalty of perjury that the sponsor has read and understands each part of the obligations described in the Affidavit of Support, and agrees freely and without any mental reservation or purpose of evasion to accept ach of those obligations in order to

make it possible for the immigrant(s) listed in the Form I-864 to become lawful permanent residents of the United States.

37. Signing the Affidavit of Affidavit of Support, the sponsor agrees to notify the Government of any change in the sponsor's address within 30 days of the change by filing a Form I-865.

38. A sponsor's duties under the Affidavit of Support commence when the beneficiary becomes a Resident based on the Affidavit of Support.

39. An Affidavit of Support sponsor must continue to perform under the contract until the occurrence of one of five events (collectively "the Terminating Events") set forth in the Affidavit of Support.

40. The sponsor's obligation under the Affidavit of Support conclude once the beneficiary becomes a U.S. citizen (the "First Terminating Event").

41. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary has worked or can receive credit for 40 quarters of work under the Social Security Act (the "Second Terminating Event").

42. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary is no longer a permanent resident and has departed the U.S. (the "Third Terminating Event").

43. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary is subject to an order of removal but applies for and obtains in removal proceedings a new grant of adjustment of status based on a new affidavit of support, if required (the "Forth Terminating Event").

44. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary dies (the "Fifth Terminating Event").

45. To serve as an Affidavit of Support sponsor, an individual must demonstrate income at our above 125% of the Federal Poverty Guidelines for the individual's household size.

46. To serve as a sole Affidavit of Support sponsor, a visa petitioner must be able to demonstrate household income at or above 125% of the Federal Poverty Guidelines.

47. If the income of the visa petitioner is below 125% of the Federal Poverty Guidelines, the individual may demonstrate that he or she owns assets equal to at least five times the income shortfall (or three times in the case of marriage-based case). Such assets must be convertible to U.S. cash within 12 months.

48. An immigration petitioner who lacks income sufficient to serve as an Affidavit of Support sponsor may obtain the assistance of an additional individual who agrees to serve as a "joint sponsor" by executing and filing an additional Affidavit of Support.

49. If the Government determines that the visa petitioner lacks sufficient income and assets to serve as a sole Affidavit of Support sponsor, the individual will be issued with a notice describing the financial deficiency and notifying the individual of the possibility of submitting an additional Affidavit of Support signed by a joint sponsor.

50. If the underlying family-based immigration case is permitted to proceed without a joint sponsor, this demonstrates the Government's determination that the visa petitioner has the ability to maintain household income, including the intending immigrant, at a level at least 125% FPG.

51. A sponsor's support obligation under the Affidavit of Support commence when an intending immigrant obtains Resident status on the basis of an application that included the sponsor's Form I-864. 8 C.F.R. § 213a.2(e)(1)

52. Per 8 U.S.C. § 1183a(c), a beneficiary is entitled to recover reasonable attorney fees and costs incurred in the process of enforcing her rights under the Affidavit of Support.

53. Under the terms of the Affidavit of Support, a beneficiary is entitled to recover reasonable attorney fees and costs incurred in the process of enforcing her rights under the Affidavit of Support.

**Plaintiff's immigration to the United States.**

54. Mr. Espeseth is a citizen of the United States of America.

55. Ms. Lewis is a citizen of Jamaica.

56. Ms. Lewis and Mr. Espeseth became engaged to marry.

57. Upon information and belief, Mr. Espeseth caused to be filed with USCIS a Form I-129F, Petition for Alien Fiance(é) (the "Visa Petition"), listing Ms. Lewis as the intending immigrant beneficiary.

58. Upon information and belief, by filing the Visa Petition, the Mr. Espeseth initiated the process of bringing the Ms. Lewis to the United States, ultimately resulting in her securing status as a Resident.

59. Upon information and belief, USCIS subsequently approved the Mr. Espeseth's Visa Petition.

60. Upon information and belief, upon approving the Visa Petition, USCIS forwarded the petition packet to the U.S. Department of State, which is charged with adjudicating visa applications at U.S. consulates around the world.

61. Ms. Lewis thereafter filed an Online Nonimmigrant Visa Application. In doing so, Plaintiff sought to secure a "K-1" fiancé(e) visa.

62. Upon information and belief, the visa application was based on Mr. Espeseth's approved Visa Petition.

63. Upon information and belief, the Department of State subsequently approved Plaintiff's DS-160 visa application.

64. On March 16, 2018, Ms. Lewis was admitted to the United States as a K-1 category fiancée nonimmigrant.

65. Ms. Lewis and Mr. Espeseth were lawfully married on June 14, 2019.

66. Ms. Lewis and Mr. Espeseth retained the services of attorney Deborah Anne Weber to jointly represent them in the process of securing Resident status for Ms. Lewis.

67. As her attorney, Ms. Weber prepared a USCIS Form I-485, Application to Register Permanent Residence or Adjust Status (the "Residency Application").

68. A true and correct copy of the Residency Application is attached as Exhibit 2.

69. Ms. Lewis's Residency Application was based on her entrance to the United States as a K-1" fiancée who married her Form I-129F petitioner within 90 days of her arrival in the U.S. *See* Exhibit 2, p. 3, Part 2, Item 1.a.

70. Ms. Weber, acting as Ms. Lewis's attorney, filed the Residency Application with USCIS.

71. USCIS received Ms. Lewis's Residency Application on June 1, 2018 and assigned it case number MSC1891218260.

72. Plaintiff qualified for none of the grounds at 8 C.F.R. § 213a.2(a)(2)(ii) that would have exempted her from the requirement that she file an Affidavit of Support for her Residency Application.

73. Acting as Mr. Espeseth's attorney, Ms. Weber prepared an Affidavit of Support for Mr. Espeseth's signature, to be used in support of Ms. Lewis's Residency Application.

74. A true and correct copy of the Affidavit of Support as prepared for Mr. Espeseth's signature is attached as Exhibit 1.

75. Upon information and belief, Defendant signed the Affidavit of Support and caused it to be filed with USCIS in support of Ms. Lewis's Residency Application.

76. Once Mr. Espeseth's Original Affidavit of Support was filed with USCIS it was executed. 8 C.F.R. § 213a.2(a)(B)(ii).

77. Upon its execution, the Affidavit of Support became a binding contract between Mr. Espeseth and the United States Government. 8 C.F.R. § 213a.2(d).

78. USCIS approved Ms. Lewis's Residency Application on June 14, 2019.

79. A true and correct version of the Residency Application approval notice is attached as Exhibit 3.

80. Plaintiff was granted status as a Resident of the United States on June 14, 2019.

**Ms. Espeseth's breach of contract.**

81. Mr. Espeseth's duties under the Affidavit of Support commenced on June 14, 2019.

82. Ms. Lewis's Resident status was based on Affidavit of Support signed by Defendant.

83. Ms. Lewis's Resident status was based on the Affidavit of Support because but for the fact that the Mr. Espeseth submitted that Affidavit of Support, the Government would not have granted Resident status to Ms. Lewis.

84. Ms. Lewis's Resident status was based on the Affidavit of Support because Mr. Espeseth executed that document, caused it to be fled in support of Plaintiff's application for status as a Resident, and Government relied upon the existence of the Affidavit of Support in granting Resident status to Ms. Lewis.

85. Since June 14, 2019, Ms. Lewis's income has, from time to time, fallen beneath 125% FPG for Ms. Lewis's household size.

86. Mr. Espeseth has failed to provide support necessary to ensure that the Ms. Lewis's income is at least 125% FPG since June 14, 2019.

**Facts concerning Terminating Events.**

87. No event has occurred that would constitute a Terminating Event under the Affidavit of Support.

88. First Terminating Event has not occurred because Ms. Lewis has not become a U.S. citizen.

89. The Second Terminating Event has not occurred because Ms. Lewis has neither worked nor can receive credit for 40 quarters of work under the Social Security Act.

90. The Third Terminating Event has not occurred because Ms. Lewis has not both lost status as a permanent resident and departed from the U.S.

91. The Forth Terminating Event has not occurred because Ms. Lewis is not both subject to an order of removal and has also applied for and obtained in removal proceedings a new grant of adjustment of status based on a new affidavit of support (if required).

92. The Fifth Terminating Event has not occurred because Ms. Lewis is alive.

93. Mr. Espeseth's duties under the Affidavit of Support remain in effect.

# VII. CLAIMS FOR RELIEF

**1 – Breach of contract.**

94. Ms. Lewis re-alleges and incorporates all paragraphs above as though fully stated herein.

95. By executing the Affidavit of Support, Mr. Espeseth entered into an express written contract with the United States Government.

96. Ms. Lewis is a third-party beneficiary of the Affidavit of Support.

97. Ms. Lewis has standing as third-party to enforce her rights under the Affidavit of Support.

98. Under the express terms of the Affidavit of Support, Mr. Espeseth agreed to provide Ms. Lewis with any support necessary to maintain her at an income that is at least 125 percent of the Federal Poverty Guidelines for her household size.

99. Mr. Espeseth's responsibility to provide income support commenced on June 14, 2019 when Ms. Lewis became a lawful permanent resident of the United States.

100. All conditions precedent to Mr. Espeseth's duty to perform on the Affidavit of Support were fulfilled as of June 14, 2019.

101. Mr. Espeseth has breached the Affidavit of Support by failing to provide income support to Ms. Lewis.

102. As a result of Mr. Lewis's breach of contract, Ms. Lewis has suffered damages in an amount to be determined at trial.

## VIII. REQUEST FOR RELIEF

Plaintiff requests the following relief from the Court:

A. Entry of judgment against Mr. Espeseth and in favor of Ms. Lewis each and every cause of action asserted herein.

B. An award of actual damages in an amount equivalent to 125% of the Federal Poverty Guideline for a household size of one for the period from June 14, 2019 to the date on which judgment issues.

C. A declaration that Ms. Lewis is entitled to continued receipt of financial support from Mr. Espeseth in the amount of 125% the Federal Poverty Guidelines for her household size, less actual income, until the occurrence of one of the Terminating Events.

D. An order of specific performance, requiring Mr. Espeseth to make monthly payments to Ms. Lewis for the amount set forth in Paragraph C above, until such time as a Terminating Event occurs.

E. An award of all Ms. Lewis's attorney fees.

F. An award of all Ms. Lewis's costs.

G. The right to amend this complaint to conform to the evidence presented at trial.

H. Such other and further relief in Ms. Lewis's favor as the Court may deem just and equitable under the circumstances.

Respectfully submitted to the Court this 28th day of July 2020.

**Immigration Support Advocates**

By: /s/ Greg McLawsen
Greg McLawsen, WSBA #41870

Physical office:
724 S. Yakima Ave., Suite 100
Tacoma, WA 98405

Mailroom:
113 Cherry St., ECM# 45921
Seattle, WA 98104-2205

Tel. (844) 557-3646
greg@i-864.net

*Attorney for Plaintiff Loraine Angela Lewis*